No. 13395

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

BILLINGS LEASING CO.,
a Montana Corporation,

Plaintiff and Appellant,

-vs-

JEROLD PAYNE,

Defendant and Respondent.

Appeal from:   District Court of the Thirteenth Judicial
               District
               Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        R. P. Ryan argued, Billings, Montana

    For Respondent:

        Brown and Huss, Miles City, Montana
        George Huss argued, Miles City, Montana
        Brandt, Miller, Nelson & Chrisopherson, Salt Lake
         City, Utah
        Robert W. Miller argued, Salt Lake City, Utah

                    Submitted:   September 13, 1977

                     Decided:  APR 11 1978

Filed:  APR 11 1978


                    Thomas J. Kearney
                                  Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff Billings Leasing Co. appeals from a jury verdict and judgment in the Yellowstone County District Court denying its claim and awarding $9,194.25 to defendant Payne on his counterclaim.

As we attempt to unscramble the issues raised on appeal, we find that neither party had a coherent theory of recovery which was presented to the jury and covered by jury instructions. For this reason it is extremely difficult to analyze most of the issues raised on appeal. However, we do agree with Billings Leasing that there was a complete failure to instruct the jury on damages with relation to Payne's counterclaims, and for this reason we must reverse. Because there were additional errors in the instructions, we will discuss a few of these matters which hopefully will give some guidance for the retrial of this cause.

This case arises from a lease agreement between Billings Leasing and Jerald Payne whereby Payne leased for five years a new Kenworth truck at $750.00 per month for the first 30 months and $550.00 per month for the second 30 months. Payne fell several payments behind within a year of the time he leased the truck, and there were several contacts between him and Billings Leasing in an effort to bring the payments up-to-date. These contacts form part of the dispute in this case because Payne alleges that Billings Leasing extended or waived the time within which he was to make the payments in dispute, although Payne did not plead extension or waiver as an affirmative defense.

In any event, satisfactory arrangements were not made, and Billings Leasing sued Payne in a debt action for back rent on the truck. Later, in the same debt action, Billings Leasing obtained a writ of attachment and garnished Payne's wages in the amount of $2,433.00. This money was deposited with the Yellowstone County clerk of court pending the outcome of litigation.

-2-

Shortly after it filed the debt action, Billings Leasing, in a separate action, filed a claim and delivery action and obtained possession of the truck because Payne refused to voluntarily give up possession of the truck. Billings Leasing claimed it was entitled to possession under the terms of the leasing agreement. Without notifying Payne that it intended to sell the truck, Billings Leasing sold it at a private sale and realized $20,000.00 from the sale.

Payne filed two counterclaims in each of the actions. In the debt action he alleged that Billings Leasing had wrongfully obtained possession of the truck in the claim and delivery action. He claimed that the truck was repossessed without notice to him which violated his rights to due process of law. He also alleged in the same counterclaim that he was damaged in the amount of $6,000.00 because the private sale was not conducted in a commercially reasonable manner. He did not allege that he was also damaged because it was conducted without notice to him. The second counterclaim in the debt action alleged that the writ of attachment garnishing Payne's wages was an unlawful abuse of process because it was issued without notice to him and therefore deprived him of due process of law. He sought damages in the amount of $2,433.00, which was the amount of the wage garnishment, and interest on that amount from the date his wages were seized. Payne's counterclaims in the claim and delivery action were essentially the same as those he filed in the debt action. The debt action and the counterclaim were consolidated for trial by jury.

It is not at all clear how Payne was proceeding during trial on his counterclaims for damages. The claims he now asserts were not clearly set out in his pleadings; there was no pretrial conference or order; and he offered no instructions on the damages that he now is claiming. In his brief, he argues that there were

three separate claims of damages. The first damage claim is that Payne was damaged in the debt action by the wrongful attachment in the amount of $2,433.00. Payne did not ask for the return of the $2,433.00 in his counterclaim; rather, he asked for damages in that amount in addition to interest from the date of attachment. The second claim of damages is that he was deprived of a truck for four months before he could obtain another one and that he lost $4,000.00 net income as a result of the wrongful repossession. Payne testified to this without objection from Billings Leasing. The third claim of damage is that Payne was damaged in the amount of $3,500.00 by the failure of Billings Leasing to sell the truck in a commercially reasonable manner, in violation of section 87A-9-504(3), R.C.M. 1947, which is part of the Uniform Commerical Code as adopted in this state.

Payne seeks to justify the jury verdict in the amount of $9,194.25 on the basis that the damages testified to at trial amounted to more than the jury awarded and therefore the jury was well within the evidence in returning its verdict. However, the claim of Billings Leasing is not that the award was excessive. It is that Payne offered no instructions on the elements of damages he was seeking, and the trial court refused to instruct the jury on the elements of damages. We discuss first the misleading and incomplete instructions covering the issues raised by Payne's counterclaims, and then we discuss the failure to instruct the jury on damages.

We note at the outset that this was clearly a case calling for a pretrial conference under Rule 16, M.R.Civ.P., but none was held. As a result, this case went to trial with neither counsel for the parties nor the trial judge having a grasp of the legal issues.

At the close of the trial Billings Leasing moved for judgment as a matter of law on its claim for the back lease installments

-4-

for the truck.  It was denied.  The trial court did rule, however, that Payne's allegations of unconstitutional attachment and unconstitutional repossession of the truck could not go to the jury, and he specifically instructed the jury not to consider those claims.

As a result of this ruling, Billings Leasing argues that the only remaining counterclaim was Payne's contention that he was damaged in the amount of $6,000.00 because of the failure of Billings Leasing to conduct the sale of the truck in a commercially reasonable manner.  Payne, on the other hand, argues that other damages are still in the case because of waiver.  Waiver applies, he contends, because Billings Leasing waived the payment dates on which the installments were due and no new times were set for making the payments; therefore, the payments were not due at the time Billings Leasing attached Payne's wages and repossessed his truck.  Accordingly, Payne argues, it was unlawful for Billings Leasing to attach his wages and to repossess his truck.

Payne did not urge waiver as an affirmative defense to the action brought by Billings Leasing as required under Rule 8(c), M.R.Civ.P.  Neither did he assert waiver in his counterclaim as a basis to claim that his wages were unlawfully attached and his truck unlawfully repossessed.  Rather, his claims for unlawful attachment and unlawful repossession were based solely on denials of due process, and the District Court dismissed those counterclaims.  Despite these limitations, waiver was considered throughout the trial, although we are not certain from the record of exactly how it was urged to apply.  The jury was also instructed on the elements of waiver.  Accordingly, we are reluctant to hold that Billings Leasing was not aware of the allegations of damages arising from Payne's claims of waiver.

Billings Leasing also argues that under section 87A-1-107, R.C.M. 1947, of the Uniform Commercial Code, a waiver can only exist

-5-

if it is in writing. But that section does not exclude an oral
waiver. It simply allows a written waiver to be enforced even
though it is not supported by consideration. Moreover, the official
comment to 1 Uniform Laws Annotated, Vol. 1, §1-107, states that
" * * * this Act fully recognizes the effectiveness of waiver and
estoppel." See also United States v. Greenwich Mill & Elevator Co.,
(D.C. Ohio, 1968), 291 F.Supp. 609, 614. Nor has this Court, in
analogous situations to this before the enactment of the Uniform
Commercial Code, required that a waiver be in writing. Hewitt v.
Novak, (1945), 117 Mont. 365, 370-372, 158 P.2d 627.

We next discuss the principle instruction stating the issues
raised by Payne's counterclaims. It was totally inadequate as a
statement of the law and could only have caused jury confusion.
This instruction reads:

> "Before you may find in favor of defendant,
> JERALD PAYNE, on his counterclaim, you must find
> that one of the following propositions is true:
>
> "1. That Plaintiff extended the time for
> payments or waived the requirements for timely
> payments without notice to Defendant to the
> contrary.
>
> "2. That the Lease Agreement was an
> agreement to purchase and that:
>
> > "(a) Plaintiff failed to send notice to
> > Defendant about the sale of the tractor;
> > or,
> >
> > "(b) Plaintiff did not conduct the sale
> > in a commercially reasonable manner.
>
> "If you find that either proposition 1 or
> 2 is true, you may award Defendant such damages
> as are allowed under the other instructions herein."

This instruction permitted the jury to award damages to Payne
if they found either proposition 1 or proposition 2 to be true. It
allowed the jury to award "such damages as are allowed under the
other instructions herein." However, the only other instruction
on damages was one simply telling the jury it could award no more
than Payne's prayer for relief in the amount of $9.194.25. There

-6-

were no instructions defining the elements of damages for each claim and there were no instructions limiting the damages for the separate claims of unlawful attachment, unlawful repossession, and failure to sell in a commercially reasonable manner. Under these circumstances, it is not surprising that the jury's verdict was exactly $9.194.25.

We consider first the matter of waiver or extension of the installment payments and how it applied to Payne's separate counterclaims. A jury finding of waiver of the times for making the installment payments was not necessary for Payne to recover on his counterclaim of failure to sell the truck in a commercially reasonable manner. On the other hand, a finding of waiver was essential if the jury was to find for Payne on his claim of damages because of wrongful attachment and wrongful repossession of the truck. Obviously, if Billings Leasing did not waive the time for payment of the truck installments it would not have been unlawful (being that the constitutional counterclaims concerning due process were dismissed) for Billings Leasing to attach Payne's wages or to repossess the truck.

The failure of the instruction in not tying the waiver into wrongful attachment and wrongful repossession allowed the jury to award Payne all the damages he alleged. Thus, on this basis, the jury could well have awarded damages to Payne for his claim of failure to sell in a commercially reasonable manner. For the instruction on waiver to be proper, the jury should have been told that it related only to Payne's claims of wrongful attachment and wrongful repossession.

Likewise, the instruction is similarly deficient in paragraph 2(a) by allowing the jury to award all the damages alleged if it found that the agreement involved was one to purchase and that Billings Leasing did not send advance notice to Payne about the sale of the truck. Clearly, the failure of Billings Leasing to send

-7-

notice to Payne
/before the sale does not by itself entitle Payne to damages. Failure
to send notice does not in any way establish either a wrongful at-
tachment or wrongful repossession, both of which had already occurred.
Those were two entirely separate counterclaims. Moreover, if there
was a separate claim that Payne was damaged solely because Billings
Leasing failed to give notice to Payne of its intent to sell the
truck, it was not raised in the pleadings. Nor did the evidence at
trial indicate that failure to give notice was a separate claim for
damages.

Under paragraph 2(b) of the instruction, the jury could
award damages to Payne if it found an agreement to purchase coupled
with a failure to sell the truck in a commercially reasonable manner.
Even if the jury could find damages resulting from a failure to
sell in a commercially reasonable manner, the jury could not also
for the same reason award damages for wrongful attachment and wrong-
ful repossession. Again, those were two separate counterclaims
which would arise only upon a finding of waiver and also that Payne
was damaged as a result.

In his brief Payne seeks to justify part of the jury award
as damages for wrongful attachment and another part of the award
as damages for wrongful repossession. Not one instruction defined
attachment or wrongful attachment or attempted to place them within
the issues of the case. The same can be said for the claim of
damages for wrongful repossession of the truck.

As previously indicated, the record is barren of instruc-
tions defining the separate elements of damages which Payne claims
he suffered. At the close of the case and during the settlement
of jury instructions, counsel for Billings Leasing twice emphatically
reminded the court and Payne's counsel that there were no instruc-
tions on damages and stated that the jury should not be allowed to
speculate on the damages with no guidelines. Payne's counsel and
the trial court ignored these warnings, and the case went to the
jury with no guidelines.

The duty of the trial court to instruct the jury has been generally recognized as one that is necessary and inherent in the court.  An excellent work written for trial judges, McBride, The Art of Instructing the Jury (1969, Anderson Publishing Co.) states at page 16:

> "Today, the law in nearly all states requires the judge to instruct the jury.  Even in the absence of statute or rule, the duty to do so without request is not only obvious and necessary but it is a power inherent in the court."

McBride further emphasizes the need for jury instructions by quoting from California Jury Instructions (Criminal, page 8) at page 17:

> " * * * In instructing the jurors, we must assume that they have no knowledge of the rules of law and that therefore, they must be instructed on all points of law which, under any reasonable theory, might be involved in their deliberations, to the end that their decision will be according to the law and the evidence and untinged by any private and possibly false opinion of the law that they entertain.'"

While the necessity to instruct and to properly instruct is no doubt greater in a criminal case because of the fundamental constitutional protections, the above statement serves to underline the importance of the trial judge's function to instruct the jury in all cases--civil as well as criminal.  That duty cannot be delegated to counsel.

Jury instructions are crucial to a jury's understanding of the case and, unfortunately, counsel cannot always be relied upon to provide those instructions.  In Wright & Miller, Federal Practice and Procedure, Civil §2556, the duty of the trial judge is stated:

> "It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth.  The court must instruct the jury properly on the controlling issues in the case even though there has been no request for an instruction or the instruction requested is defective."  (Emphasis added.)

-9-

Moreover, there is a statutory duty in this state to instruct the jury, imposed by section 93-5101(6), R.C.M. 1947, which provides:

> "When instructions have been passed upon and settled by the court, and before the arguments of counsel to the jury have begun, the court shall charge the jury in writing, giving in such charge only such instructions as are passed upon and settled at such settlement. <u>In charging the jury, the court shall give to them all matters of law which it thinks necessary for its information in rendering a verdict.</u>" (Emphasis added.)

In Zanos v. Great Northern Ry. Co., (1921), 60 Mont. 17, 22, 198 P. 138, this Court construed Section 6746, a predecessor to section 93-5101, and stated there are at least minimum standards to which a trial judge must adhere when instructing the jury:

> " * * * It may be stated as a general rule that where the instruction, in appropriate language, calls the attention of the jury to the subject matter to be considered and fairly states and presents the questions to be determined, it is sufficient. <u>Section 6746, Revised Codes, does not require more than this of the court's own motion.</u> If, in such a case, a more specific instruction than that given is desired by a party, it is his duty to tender one, or to tender a modification of the one given. It is not sufficient merely to demand that the court do it. * * *" (Emphasis added.)

Nor do we believe that Rule 51, M.R.Civ.P., dilutes these minimum responsibilities. The rule provides in pertinent part that " * * * No party may assign as error the failure to instruct on any point of law unless he offers an instruction thereon." This rule was designed to place a burden on counsel to present the proper instructions to the trial court; it was not designed to water-down the minimum duties of the trial court to instruct the jury.

There are other errors in the instructions, but we feel those we have mentioned are sufficient to demonstrate that there was a complete failure to instruct the jury on damages and a failure to properly instruct the jury on the issues relating to Payne's counterclaims.

We vacate the judgment of the District Court and remand for a new trial consistent with this opinion.

_____
                Justice

We Concur:

_____
                Justices

Mr. Chief Justice Frank I. Haswell, specially concurring.

I concur in the result in this case granting a new trial.

_____
            Chief Justice

_____
                Justice