Richard GAUTHIER, Plaintiff-Appellee,

v.

AMF, INC., Defendant-Appellant.

No. 85-3750.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 1986.

Decided April 29, 1986.

R.P. Ryan, Atty., Ryan & McAllister, Billings, Mont., for plaintiff-appellee.

L. Randall Bishop, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., for defendant-appellant.

Before WALLACE and SKOPIL, Circuit Judges, and HENDERSON,* District Judge.

THELTON E. HENDERSON, District Judge:

This is an appeal from a jury verdict for plaintiff Richard Gauthier against defendant AMF, Inc. in a products liability case tried in January 1985. Montana substantive law governs this diversity case. AMF appeals the trial court's admission of certain evidence, as well as its refusal to give a proposed jury instruction. We reverse and remand for a new trial.

* Honorable Thelton E. Henderson, United States District Judge, Northern District of California, sitting by designation.

## I. BACKGROUND

On November 19, 1977, Gauthier injured his hand when he placed it inside the discharge chute of a running snow thrower, in an attempt to unclog snow that got caught in the machine during a snow storm.

The snow-thrower was a "two-stage" machine designed by defendant AMF in June or July 1971, and distributed in August 1972. The terminology "two-stage" refers to the operation of the auger blade at the front of the unit, which gathers the snow (first stage), and the operation of the rotor-impeller that impels the gathered snow upward and out of the discharge chute (second stage).

Gauthier sued AMF in strict liability in tort, alleging three specific design defects: failure to provide adequate warnings; failure to incorporate "deadman" control devices that would stop the engine or the auger-impeller from running when the user left the operator's position; and failure to employ an M-shaped discharge chute guard wire or metal bar to prevent hands from contacting the rotor while it's running. The jury found that Gauthier was 40% responsible for his own injury, and AMF was 60% at fault. Thus, Gauthier's judgment was for 60% of his total damages of $235,-948. The jury declined to award any punitive damages.

## II. STANDARD OF REVIEW

The law is well-settled that we review evidentiary rulings in a civil case for abuse of discretion. *Clady v. County of Los Angeles,* 770 F.2d 1421, 1433 (9th Cir.1985).

■ A defendant is also entitled to an instruction concerning his or her theory of the case if it is supported by law and has some foundation in the evidence. *Underhill v. Royal,* 769 F.2d 1426, 1433 (9th Cir.1985); *U.S. v. Echeverry,* 759 F.2d 1451, 1455 (9th Cir.1985). However, the reviewing court examines the instructions as a whole, rather than merely viewing the failure to give any one instruction. *U.S. v. Kenny,* 645 F.2d 1323, 1337 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). The trial court has broad discretion in formulating the instruction, and will be reversed only upon a showing of abuse of discretion. *U.S. v. Wellington,* 754 F.2d 1457, 1463 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985).

## III. DISCUSSION

### A. *Proposed Jury Instruction on Warnings*

■ We first consider whether it constituted reversible error for the court to refuse to give the jury AMF's proposed instruction regarding warnings.

The instruction at issue is drawn from the final paragraph of Comment j to Restatement (Second) of Torts, § 402A, and reads as follows:

> Where warning is given, the manufacturer may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in a defective condition, nor is it unreasonably dangerous.

The court refused the instruction and charged the jury without reference to warnings.

AMF asked for the instruction because Gauthier's expert testified that warnings were not a "suitable substitute for safety features." AMF claimed at trial that the expert was testifying to a legal duty, and the court promised to give a cautionary instruction. However, the court gave no instructions regarding the legal effect of warnings.

Thus, the jury was left to conclude that defendant's case—that plaintiff should have heeded the written warnings on the machine and defendant had the right to assume he would—had no proper foundation in Montana law. In fact, it appears that Montana has implicitly adopted the Restatement position on warnings. *Rost v. C.F. & I. Steel Corp.,* —— Mont. ——, 616 P.2d 383, 385 (1980). Other courts have also held that where adequate warnings are given, a product is neither defective nor unreasonably dangerous. *Young v. Up-*

*Right Scaffolds, Inc.*, 637 F.2d 810, 814 (D.C.Cir.1980); *Caplaco One, Inc. v. Amerex Corp.*, 572 F.2d 634, 636 (8th Cir.1978); *Reliance Insurance Co. v. Al E. & C., Ltd.*, 539 F.2d 1101, 1106 (7th Cir.1976).

AMF concedes that *adequacy* of the warnings is a proper jury question. *Bryant v. Technical Research Co.*, 654 F.2d 1337 (9th Cir.1981). However, since the legal effect of adequate warnings was an important issue of law in this case, the court had a duty to charge the jury on that issue. *Billings Leasing Co. v. Payne*, 176 Mont. 217, 577 P.2d 386, 390–91 (1978); *Katch v. Speidel*, 746 F.2d 1136, 1139 (6th Cir.1984).

Failure to give an instruction on the legal effect of the adequacy of the warnings was an abuse of discretion and was not harmless error. *McGowne v. Challenge-Cook Bros.*, 672 F.2d 652, 663–4 (8th Cir.1982); *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 819 (10th Cir.1979). In the absence of any instruction, the jury may have concluded, for example, that AMF's warning was "adequate" in terms of its wording, color, and location and that it adequately communicated its message to the consumer, but nonetheless decided the risk still rendered the snow thrower "unreasonably dangerous." Such an outcome would be contrary to law, and thus the failure of the court to instruct the jury was prejudicial error that requires a new trial.

### B. *Subsequent Remedial Measures*

We next turn to the issue of whether Rule 407 of the Federal Rules of Evidence prohibits the admission of evidence of subsequent remedial measures in a strict liability case alleging defective design.

Gauthier brought into court a 1984 Toro snow thrower, similar to that one designed by AMF, to compare to the 1971 model at issue. He referred to the 1984 model and its safety devices in a way that was intended to inform the jury of subsequent remedial measures. For example, Gauthier asked his expert about the new machine and was told, "It is very similar in size and power [to the 1972 model] ... but the controls on the machine that was in here in the courtroom this morning perform a different type of deadman function." Gauthier also referred to specific safety devices on the 1984 model in his Opening Statement.

Rule 407 states that subsequent remedial measures are "not admissible to prove negligence or culpable conduct in connection with the event." Fed.R.Evid. 407. The question for this court is whether conduct that results in strict liability should be considered "culpable conduct" under the Rule.

Nearly all of the Circuits that have considered this issue have decided that Rule 407 *does* apply to strict liability cases. *Roy v. Star Chopper Co.*, 584 F.2d 1124, 1134 (1st Cir.1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); *Cann v. Ford Motor Co.*, 658 F.2d 54, 59–60 (2d Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982); *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir.1982); *Werner v. Upjohn Co.*, 628 F.2d 848, 854 (4th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981); *Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883, 886 (5th Cir.1983); *Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 232 (6th Cir.1980); *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 469 (7th Cir.1984).

The Eighth Circuit originally held that Rule 407 did not apply to strict liability, *Robbins v. Farmers Union Grain Terminal Association*, 552 F.2d 788, 793 (8th Cir.1977), but in a recent prescription drug case, the court distinguished *Robbins* and found that the issue of failure to warn in negligence cases was basically the same as in strict liability cases, so Rule 407 should apply. *DeLuryea v. Winthrop Laboratories*, 697 F.2d 222, 228–29 (8th Cir.1983). Only the Tenth Circuit so far has held that Rule 407 does not apply in products liability cases. *Herndon v. Seven Bar Flying Service, Inc.*, 716 F.2d 1322, 1331 (10th Cir. 1983), *cert. denied sub nom. Piper Aircraft Corp. v. Seven Bar Flying Service, Inc.*, 466 U.S. 958, 104 S.Ct. 2170, 80

L.Ed.2d 553 (1984). The Ninth Circuit has reserved the question. *Longenecker v. General Motors Corp.*, 594 F.2d 1283, 1286 (9th Cir.1979).

Several state courts have held that subsequent remedial measures are admissible in products liability cases (based on state evidence rules similar to Rule 407), of which the landmark case was *Ault v. International Harvester Co.*, 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974).

The debate revolves around the public policy purposes of Rule 407. The purpose of the rule is to encourage tortfeasors to remedy hazardous conditions without fear that subsequent measures will be used as evidence against them. Does this purpose apply to strict liability cases? The California Supreme Court explained why it does not think so:

> The contemporary corporate mass producer of goods, the normal products liability defendant, manufactures tens of thousands of units of goods; it is manifestly unrealistic to suggest that such a producer will forego making improvements in its product, and risk innumerable additional lawsuits and the attendant adverse effect upon its public image, simply because evidence of adoption of such improvement may be admitted in an action founded on strict liability for recovery on an injury that preceded the improvement.

*Ault*, 13 Cal.3d at 120, 117 Cal.Rptr. at 816, 528 P.2d 1148.

On the other hand, most Circuits have come to the opposite conclusion and held that there is no practical difference between strict liability and negligence in defective design cases and the public policy rationale to encourage remedial measures remains the same. *Flaminio*, 733 F.2d at 467 ("the test for an 'unreasonably dangerous' condition is equivalent to a negligence standard of reasonableness ...") (quoting *Birchfield v. Int'l Harvester Co.*, 726 F.2d 1131, 1139 (6th Cir.1984)). As the court in *Flaminio* points out, it is precisely the

large manufacturers who are defendants in many product liability suits who are most likely to know about Rule 407 and be affected by the decision whether to apply it. *Flaminio*, 733 F.2d at 470.

■ The overwhelming trend in the federal courts has been to exclude evidence of subsequent remedial measures in products liability cases. We find the reasoning in those cases to be persuasive and hereby adopt the position that Rule 407 applies to strict liability cases.

■ ·Nevertheless, Rule 407 does include an exception for evidence offered to prove *feasibility*, if controverted, of certain designs, or *impeachment*, which Gauthier mentions parenthetically as reasons for the admissibility of his evidence of subsequent changes. First, the contention that Gauthier should have been permitted to use evidence of subsequent design changes for purposes of impeachment is raised for the first time on appeal and thus should not be considered. *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir. 1984). This is especially true since Gauthier devotes half of one sentence to his contention and does not expound on it. Clearly, it is not an issue central to the case.

Second, even if Gauthier had properly preserved the issue for appeal, AMF did not dispute feasibility. In its memorandum in support of its motion in limine, AMF admitted that the engineering knowledge was available in 1972 to install deadman controls and the cost was not prohibitive. However, AMF refused to agree to a stipulation to be read to the jury that the safety devices were "feasible" to install for fear that the jury would interpret the word too broadly and then it could be used against AMF on the issue of punitive damages. As one court has decided,

> It is enough if defendant agrees that it will not introduce evidence of nonfeasibility or argue it. Plaintiffs could then introduce evidence of feasibility other than subsequent remedial measures and

could argue that defendant had not disputed the point.

*Friedman v. National Presto Industries,* 566 F.Supp. 762, 765 (E.D.N.Y.1983).

In this case, AMF conceded that the safety devices were technologically and economically feasible but then argued that they concluded that the safety problem was not great enough to warrant the trade-off of consumer frustration, increased complexity of the product, and risk of consumer efforts to disconnect the safety device. In a similar situation, the Seventh Circuit found that where a defendant argues about the trade-offs involved in taking precautionary measures, it is not placing *feasibility* in issue. *Flaminio,* 733 F.2d at 468.

Therefore, the admission of the evidence was in violation of the Rule 407 and was an abuse of discretion. Such admission of post-accident corrective measures has been found not to be harmless in other cases. *Hall v. American Steamship Co.,* 688 F.2d 1062, 1067 (6th Cir.1982); *Werner v. Up-John Co., Inc.,* 628 F.2d 848 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981). In this case, testimony and demonstrative evidence emphasized subsequent design changes by AMF and by the industry throughout the trial. The jury was thus left with the impression that it should measure the standards and information available in 1984 with those available to AMF at the time the snow thrower in issue left its possession and control in 1972.

Accordingly, admission of the evidence of subsequent design changes was prejudicial error that requires a new trial.

## IV. CONCLUSION

In light of the court's reversal on the first two issues raised by appellant, we find it unnecessary to reach the issues of whether the court erred in admitting general statistical evidence and punitive damages evidence.

REVERSED AND REMANDED.