No. 00-379

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 215

DONALD L. SCHUFF and MARY JO SCHUFF,
husband and wife,

       Plaintiffs and Appellants,

   v.

ROBERT L. JACKSON,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and for the County of Cascade,
                  The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

              William J. Gregoire, Jerry W. Schuster, Smith, Walsh, Clarke & Gregoire,
              Great Falls, Montana

       For Respondent:

              E. Lee LeVeque, Conklin, Nybo, LeVeque & Lanning, P.C., Great Falls,
              Montana

                 Submitted on Briefs:  February 7, 2002

                            Decided:  September 24, 2002

Filed:

                _____
                           Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Plaintiffs, Donald and Mary Jo Schuff, brought this action in the District Court for the Eighth Judicial District in Cascade County to recover damages from the Defendant, Robert L. Jackson, based on his alleged negligent operation of a boat in which Schuffs were passengers.  They alleged that they were injured as a result of Jackson's negligence.  Following a trial, the jury returned a verdict for Jackson.  During and following trial, Schuffs moved for judgment as a matter of law and following trial they moved for a new trial.  Those motions were denied.  Schuffs appeal from the denial of those motions.  We affirm in part, reverse in part, and remand for a new trial.

¶2    The following issues are presented on appeal:

¶3    1.  Did the District Court err when it denied Schuffs' motions for judgment as a matter of law?

¶4    2.  Did the District Court abuse its discretion when it denied Schuffs' motion for a new trial based on their contention that Jackson impermissibly interjected the defenses of "unavoidable accident" and "assumption of risk"?

¶5    3.  Did the District Court abuse its discretion when it denied Schuffs' motion for a new trial based on their contention that the District Court erred when it refused to give several of Schuffs' proposed jury instructions?

FACTUAL AND PROCEDURAL BACKGROUND

¶6    On July 28, 1996, Donald and Mary Jo Schuff were invited by Robert Jackson and his wife to accompany them on a boat ride on the

2

Missouri River in Jackson's twenty-one foot competition ski boat. Schuffs accepted the Jacksons' invitation and at about 2:00 p.m. that day, they launched the boat from Broadwater Bay, south of Great Falls, Montana. After launch, Jackson operated the boat southward or upstream with the intention of taking Schuffs to a large sand bar located further upstream. To get to the sand bar, Jackson had to navigate past an underwater rock formation which extended from the west bank of the Missouri River, approximately three-fourths of a mile south of White Bear Island Marina. Jackson knew the location of the rock formation and understood that the rock formation was dangerous to boaters. As an experienced boater on the Missouri River, Jackson had navigated his boat through the area on approximately forty prior occasions.

¶7   To safely negotiate the area where the rock formation is located, boat operators must navigate through a narrow channel between a hidden sandbar on one side and the underwater rock outcropping on the other. The channel is approximately twenty to twenty-five feet wide. On the day of the accident, Jackson saw rippling water over the formation as he approached from about 100 yards away, and was aware that the rippling water indicated either shallow water or an obstruction. Based on his knowledge of the area and its inherent risk, Jackson ensured that all of his passengers were safely seated. He then successfully navigated two of the three rock outcroppings before colliding with the third.

¶8   Jackson's boat collided with the rock formation at a speed of between 28 and 32 miles per hour. Jackson acknowledged that he

3

could have slowed the speed of the boat as he approached the rock formation and admitted he miscalculated its location. However, he also testified that it would have been dangerous for him to navigate the channel at a slower speed because more of the boat would have been in the water, the boat would have been less maneuverable, and that at a slow speed, the river current could more easily move the boat out of position. Therefore, he believed that the proper way to travel through the channel was "on plane," so that as little of the boat as possible was in the water. Jackson navigated the boat on the day of the accident in the same manner he had on previous occasions.

¶9 As a result of the collision, Mary Jo was thrown from her seat into Donald. She sustained a closed head injury and Donald suffered minor injuries. Schuffs alleged that Jackson's negligence caused their injuries.

¶10 The trial in this matter began on March 6, 2000. On March 8, 2000, Jackson presented the testimony of three witnesses, Mike Mooney, Steve Knudson, and Larry Houck, all of whom had extensive boating experience in the area of the river where the collision occurred. Schuffs did not object to the testimony, however, and on March 9, 2000, they filed a motion to strike the testimony based on their contention that the witnesses impermissibly interjected the defenses of "unavoidable accident" and "assumption of risk." Schuffs also requested that the District Court submit curative instructions to the jury based on the witnesses' testimony. After listening to oral argument on the issue, the District Court denied

4

Schuffs' motion. Schuffs' also filed a motion for judgment as a matter of law on the issue of liability. That motion was also denied.

¶11 On that same day, the District Court also refused to give several of Schuffs' proposed jury instructions, including Subparagraph 2 of Proposed Jury Instruction No. 15, as well as Proposed Jury Instructions numbered 21, 22, and 24.

¶12 The jury returned a verdict in favor of Jackson, finding he was not negligent in the operation of his boat on the date of the collision. After entry of judgment, Schuffs filed a renewed motion for judgment as a matter of law on the issue of liability or, in the alternative, a motion for a new trial pursuant to Rules 50(b) and 59(a), M.R.Civ.P. The District Court denied both motions on May 22, 2000, and on June 9, 2000. Schuffs appealed the District Court's denial of those motions.

STANDARD OF REVIEW

¶13 A motion for a directed verdict or judgment as a matter of law may only be granted where it appears as a matter of law that a party cannot prevail upon any view of the evidence including the legitimate inferences therefrom. *Ryan v. City of Bozeman* (1996), 279 Mont. 507, 510, 928 P.2d 228, 229. That standard of review adheres to the principle that courts should exercise the greatest self-restraint in interfering with the constitutionally mandated processes of a jury decision. *Ryan*, 279 Mont. at 510, 928 P.2d at 230. Only if there is a complete absence of any credible evidence in support of the verdict will a motion for judgment as a matter of

5

law be upheld. *Ryan*, 279 Mont. at 510, 928 P.2d at 230. On appeal from denial of such a motion, we review the evidence in a light most favorable to the prevailing party. *Barrett v. Larsen* (1993), 256 Mont. 330, 335, 846 P.2d 1012, 1016.

¶14 The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of discretion. *Baxter v. Archie Cochrane Motors, Inc.* (1995), 271 Mont. 286, 287-88, 895 P.2d 631, 632. A new trial may be granted for any of the reasons set forth in § 25-11-102, MCA, which materially affect the substantial rights of the aggrieved party, including errors in the application of the law. *Baxter*, 271 Mont. at 288, 895 P.2d at 632.

DISCUSSION

ISSUE 1

¶15 Did the District Court err when it denied Schuffs' motions for judgment as a matter of law?

¶16 According to Schuffs, Jackson knew the rock formation existed, knew it should be avoided when the water was shallow, knew it was dangerous to boaters if hit, and acknowledged that he made a mistake and committed an error in judgment or miscalculation which caused him to hit the formation. Based on those undisputed facts and the common law and statutory duties imposed upon Jackson as a boat operator, Schuffs contend that Jackson was negligent as a matter of law, and that the District Court erred when it denied their motion for judgment as a matter of law. Schuffs rely on

6

*Craig v. Schell*, 1999 MT 40, 293 Mont. 323, 975 P.2d 820, as authority for their argument.

¶17 Jackson responds that the appropriate test to determine whether he was negligent was not whether he made a mistake when he collided with the rock formation, but whether his conduct on July 28, 1996, conformed to that of an ordinarily prudent boater operating under the same or similar circumstances. According to Jackson, there was substantial evidence to support the jury's finding that he was operating his boat at the time of the accident in accordance with the duties imposed upon him both at common law and by statute. Therefore, Jackson contends that the District Court did not err when it denied Schuffs' renewed motions.

¶18 After review of the record and the instructions submitted to the jury, we conclude that there was sufficient evidence to support the jury's verdict. The jury was instructed by the District Court as follows:

                    Instruction 9
     Every person is responsible for injury to the person
of another, caused by his negligence.
     Negligence is the failure to use reasonable care.
Negligence may consist of action or inaction. A person
is negligent if he fails to act as an ordinarily prudent
person would act under the circumstances.

     . . . .

                    Instruction 11
     If you find that the defendant violated the
following law, then the defendant is negligent. You
should then determine whether that negligence was a cause
of the plaintiffs' injuries.

          A person may not operate a motorboat in a reckless
          or negligent manner so as to endanger the life,
          limb, or property of a person by engaging in

7

> maneuvers that unreasonably or unnecessarily endanger life, limb, or property.

Therefore, whether Jackson breached his duty as an ordinarily prudent boat operator depended on whether he used reasonable care and whether he operated his boat in a manner which would endanger the life, limb, or property of others by engaging in unreasonable or unnecessary maneuvers.

¶19  The fact that Jackson admitted error during the operation of his boat does not establish negligence per se.  The relevant inquiry is whether there was sufficient evidence for the jury to find that Jackson did not breach his legal duty as a boat operator.  We conclude that the jury's verdict which found that Jackson was not negligent was supported by substantial evidence.

¶20  First, based on Jackson's testimony, it was clear that Jackson had intimate knowledge of the river where the collision occurred, was aware of the presence of the underwater hazard, and had taken the precautions he thought necessary as he approached the area.  He was an experienced boater on the Missouri River, and had safely negotiated his way through the hazard on approximately forty prior occasions.  As Jackson approached the hazard on the day of the collision, he proceeded in the same manner he had on previous successful trips through the channel.  There was no evidence that his behavior was out of the ordinary, or that he engaged in any unreasonable or unnecessary maneuvers.

¶21  Jackson's testimony was bolstered by three defense witnesses, Mike Mooney, Steve Knudson, and Larry Houck, all of whom had extensive experience as boaters in the area of the Missouri River

8

where the collision occurred. All three witnesses testified that although the general area of the obstruction is known to persons familiar with the area, because it is underwater, the exact location of the rock formation is not known and that there is always some degree of guesswork required of everyone navigating the area, even experienced boaters. Furthermore, each witness testified of his belief that the safest way to travel through the channel was "on plane," so that as little of the boat as possible was in the water. There was evidence that the speed of Jackson's boat, between 28 and 32 miles per hour, was no faster than the minimum speed necessary to get his boat "on plane."

¶22 Schuffs did not present evidence which contradicted the testimony of Jackson's three witnesses. Based on the evidence presented, there was sufficient evidence to support the jury's finding that Jackson was operating his boat in a manner consistent with other ordinarily prudent boaters under the same circumstances.

¶23 Schuffs' contention that the District Court erred is primarily based on this Court's holding in *Craig*. However, reliance on *Craig* is misplaced. In *Craig*, we held that a driver of a motor vehicle who violates a traffic statute because he or she is reacting to a hazard which should have been anticipated and injures another party as a result should be found negligent as a matter of law. ¶ 33. In that case, the defendant was driving his car when a deer unexpectedly ran onto the highway. He swerved to avoid the deer, crossed the centerline in violation of § 61-8-231, MCA, and collided with a car in the oncoming lane of traffic. It was

9

undisputed that statutory law had been violated.  The issue was whether the violation was excusable under the circumstances.  Here, the basic issue submitted to the jury was whether, as a matter of fact, statutory law had been violated.  It found that it had not been.

¶24  We conclude there was sufficient evidence to support the jury's verdict that Jackson was acting as an ordinarily prudent boat operator on the date of the accident.  Therefore, the District Court did not err when it denied Schuffs' motions for judgment as a matter of law.

ISSUE 2

¶25 Did the District Court abuse its discretion when it denied Schuffs' motion for a new trial based on their contention that Jackson impermissibly interjected the defenses of "unavoidable accident" and "assumption of risk"?

¶26 Schuffs next contend that the District Court should have granted their motion for a new trial based on testimony by Jackson and three of his witnesses to the effect that the accident was unavoidable and that Schuffs had assumed the risk of being on the river. According to Schuffs, neither of those defenses were pled and neither are permissible under Montana law. Because evidence was offered in support of those defenses, Schuffs contend they were prejudiced and that their motion for a new trial should have been granted.

¶27 Jackson responds that he did not raise the defenses of "unavoidable accident" or "assumption of risk," and did not introduce evidence or testimony to that effect. Jackson points out that those defenses were not included in any pretrial pleadings, the final pretrial order, or in Jackson's proposed jury instructions. Finally, Jackson contends that the testimony of the three witnesses now complained of was not objected to at trial, and that much of the testimony now complained of was actually elicited by Schuffs' counsel on cross-examination. Therefore, according to Jackson, Schuffs waived their right to claim error on appeal.

¶28 The basis for Schuffs' alleged prejudice was primarily the testimony of witnesses Mooney, Knudson, and Houck. Schuffs contend

11

that all three witnesses told the jury that the accident was unavoidable, and that witness Houck's testimony in particular was replete with statements about the inherent risks of boating on the Missouri River.

¶29  We have not actually held that evidence could not be offered that a person assumed the risk of injury.  Nor have we held that a witness cannot testify that an accident was unavoidable.  We have held the assumption of risk is merely a form of contributory negligence and should be considered as such.  *See Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 477, 872 P.2d 782, 790.  And we have held that juries should not be instructed that some accidents are unavoidable.  *See Graham v. Rolandson* (1967), 150 Mont. 270, 287, 435 P.2d 263, 272.  However, here, contributory negligence was never alleged.  In fact, it was agreed that Schuffs were not negligent.  Moreover, the jury was not instructed to consider either contributory negligence or the concept of an unavoidable accident.

¶30  Finally, all three witnesses testified at trial without objection.  We have previously held that in order to preserve an objection to the admission of evidence for purposes of appeal, the complaining party must make a timely objection or motion to strike and state the specific grounds for its objection.  *Kizer v. Semitool, Inc.* (1991), 251 Mont. 199, 207, 824 P.2d 229, 234.  To be timely, the objection must be made as soon as the grounds for the objection are apparent.  *Kizer*, 251 Mont. at 207, 824 P.2d at 234.  Failure to make a timely objection constitutes a waiver of

12

the right to claim error on appeal. *Kizer*, 251 Mont. at 207, 824 P.2d at 234.

¶31 Although Schuffs moved to strike the testimony of Jackson's witnesses and requested curative instructions to the jury, that motion and request were not made until the day after the witnesses actually testified and was untimely.

¶32 For this combination of reasons, we conclude that the District Court did not abuse its discretion when it denied Schuffs' motion for a new trial based on evidence which purportedly interjected "unavoidable risk" and "assumption of risk" into the trial.

ISSUE 3

¶33 Did the District Court abuse its discretion when it denied Schuffs' motion for a new trial based on their contention that the District Court erred when it refused to give several of Schuffs' proposed jury instructions?

¶34 Schuffs contend that the District Court erred when it refused to give their Proposed Jury Instructions numbered 21, 22, 24, and Subparagraph 2 of Proposed Jury Instruction No. 15. Schuffs' proposed curative instructions regarded the defenses of "unavoidable accident" and "assumption of risk" (Nos. 21 and 24), an instruction to inform the jury of the higher degree of care required in the face of a known danger (No. 22), and an instruction regarding the statutory duty imposed on boat operators by § 23-2-523(4), MCA (No. 15). Based on our resolution of Issue 2, we need not address Schuffs' claim with regard to Proposed Jury Instructions numbered 21 and 24.

13

¶35   Proposed Jury Instruction No. 22 was patterned after § 298 of the Restatement of Torts (1965), adopted by this Court in *Estate of Strever v. Cline* (1996), 278 Mont. 165, 174, 924 P.2d 666, 671, and pertains to the higher degree of care required of individuals in the face of a known danger.   Proposed Jury Instruction No. 22 stated:

> The care required of the defendant is always reasonable care.  This standard never varies but the care which it is reasonable to require of the defendant varies with the danger involved in his act, and is proportionate to it.  The greater the danger, the greater the care which must be exercised.

Schuffs contend that because the channel with the rock formation was potentially dangerous and Jackson understood that danger, the jury should have been informed of the higher degree of care required of Jackson in his effort to safely negotiate the channel.

¶36   Jackson, on the other hand, claims that the jury was properly instructed as to the degree of care required of a defendant in a negligence action by Instruction No. 9, which stated:

> Every person is responsible for injury to the person of another, caused by his negligence.
>
> Negligence is the failure to use reasonable care. Negligence may consist of action or inaction.  A person is negligent if he fails to act as an ordinarily prudent person would act under the circumstances.

Instruction No. 9 is the standard Montana Pattern Jury Instruction. Jackson contends that Instruction No. 9 was sufficient to establish Jackson's duty of care.  We conclude that Instruction No. 9 was an incomplete statement of Jackson's duty under the circumstances.

¶37   While the given instruction expresses the general duty of care required of individuals in negligence actions, it fails to inform

14

the jury of a possible greater duty of care in situations where danger is greater, as was the case here. Jackson's knowledge of the rock formation's existence and its potential danger increased the duty of care imposed on him, and the jury should have been informed of that as a matter of law. Because they were not, we conclude that the District Court abused its discretion when it failed to grant Schuffs a new trial.

¶38 Similarly, the jury should have been instructed on the duty imposed on Jackson by § 23-2-523(4), MCA, not to operate his boat at a speed greater than would permit him to bring it to a stop within the assured clear distance. The speed at which Jackson navigated the channel was an issue in this case, and the District Court's failure to inform the jury of the statutory duty imposed on boaters with regard to speed was reversible error. Section 23-2-523(4), MCA, provides in relevant part:

> A person may not operate or knowingly permit a person to operate a motorboat or vessel at a rate of speed greater than will permit the person, in the exercise of reasonable care, to bring the vessel to a stop within the assured clear distance ahead.

Subparagraph 2 of the Schuffs' Proposed Jury Instruction No. 15 stated:

> If you find that the defendant violated any of the following laws, then the defendant is negligent. You should then determine whether that negligence was a cause of the plaintiff's injury.
>
> . . . .
>
> 2. A person may not operate a motorboat or vessel at a rate of speed greater and [sic] will permit the person, in the exercise of reasonable care, to bring the vessel to a stop within the assured clear distance ahead.

15

Schuffs' Proposed Jury Instruction No. 15 included a duty imposed on Jackson as a boater about which the jury was never informed. It is the duty of the district court to instruct the jurors fully and correctly on all applicable laws. *Billings Leasing Co. v. Payne* (1978), 176 Mont. 217, 225, 577 P.2d 386, 391. In *Billings Leasing*, we cited Wright & Miller, *Federal Practice and Procedure*, Civil § 2556, for the controlling rule:

> It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth.

176 Mont. at 225, 577 P.2d at 391.

¶39 Here, the District Court inadequately instructed the jury regarding the higher degree of care imposed on Jackson based on his knowledge of the rock formation and the statutory duty imposed on Jackson by § 23-2-523(4), MCA. We conclude that its failure to do so was prejudicial error and that its refusal to grant a new trial on that basis was an abuse of discretion.

¶40 Accordingly, we affirm in part, reverse in part the judgment of the District Court, and remand for a new trial.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

16

Justice Jim Regnier dissenting and concurring.

¶41 I agree that the District Court did not err when it denied Schuffs' motion for judgment as a matter of law. I also agree the District Court correctly denied Schuffs' motion for a new trial based on their contention that Jackson impermissibly interjected the defenses of "unavoidable accident" and "assumption of risk." As the majority notes, the testimony was admitted without objection. However, on the record presented to us, in my view it was error for the District Court not to give curative instructions regarding the defenses of "unavoidable accident" and "assumption of risk." (Numbers 21 and 24.)

¶42 Jackson did not disclose in either his pleadings or the pretrial order that he was going to rely on the defenses of "unavoidable accident" and "assumption of risk." Yet Jackson's three witnesses, Mooney, Knudson and Houck, essentially testified that the accident was unavoidable. Further, Houck testified at length about the inherent risks associated with boating on the Missouri River and stated that passengers assume the risk of an accident when boating in an area of the rock formation in question. When Schuffs realized the import of this testimony, they filed a motion to strike the testimony in question. Although I do not believe the trial judge committed error by failing to grant a new trial based upon Jackson's interjection of these defenses, I believe the trial court was obligated to instruct the jury, as requested, on the impact of the "unavoidable accident" and "assumption of risk" testimony.

17

¶43 We have rejected the "unavoidable accident" defense in Montana. *Craig*, ¶ 31. Similarly, we no longer recognize "assumption of risk" as a stand alone defense. *Abernathy v. Eline Oil Field Services, Inc.* (1982), 200 Mont. 205, 211, 650 P.2d 772,775-76. Although Schuffs did not object at the time the testimony came in, they did later move to strike the testimony and ultimately requested the judge to provide curative instructions. With this record, in my view, the District Court further erred in denying their motion for a new trial for failing to give instructions Numbers 21 and 24.

/S/ JIM REGNIER

Justice Patricia O. Cotter, dissenting,

¶44    I dissent from the Court's disposition of Issue 1.  I would reverse and remand with instructions to the District Court to enter judgment for plaintiffs on liability as a matter of law, and for a new trial on the issues of causation (if appropriate) and damages only.  I would therefore not reach Issues 2 and 3.

¶45    The Court's primary mistake in resolving Issue 1 is that it focuses on whether there was sufficient evidence to support the verdict.  Schuffs asked the District Court and this Court on appeal to determine that Jackson was negligent as a matter of law.  The Court acknowledges as much in ¶ ¶ 15 and 16.  However, instead of addressing this question, the Court analyzes whether the jury had before it sufficient evidence to conclude that the statute had been violated.  See ¶ 23, herein.  The Court thus fails to answer the question of whether Jackson was negligent as a matter of law, an affirmative answer to which would obviate the necessity of weighing the sufficiency of the evidence.  As we said in *Craig v. Schell*, upon reversing a defense verdict and concluding that the defendant was negligent as a matter of law, "[a]llowing such cases to go to the jury results in anomalies, such as what has occurred here."  *Craig,* ¶ 33.  I think the jury's verdict here was an anomaly, and that this Court has perpetuated it by failing to address and answer the actual question presented.

¶46    I now turn to the question of whether the District Court erred in failing to grant judgment as a matter of law.  It is undisputed, and this Court found, that Jackson knew that the rock formation he was approaching was dangerous to boaters.  See ¶ 6, herein.  It is further undisputed that Jackson saw rippling water as he approached the sand bar from 100

19

yards away, and knew that this indicated either shallow water or an obstruction. See ¶ 7, herein. Armed with this knowledge, Jackson chose to operate his boat at a speed of 28-32 miles per hour through the dangerous rock formation area. See ¶ 8, herein. Further, although the Court did not so find, one has to assume that Jackson realized that the risk of injury to his passengers in a collision at 28-32 miles per hour was significantly greater than it would have been at 3-5 miles per hour.

¶47 Section 23-2-523(1)(a), MCA, prohibits a person from operating a motorboat "in a reckless or negligent manner . . . by engaging in maneuvers that unreasonably or unnecessarily endanger life, limb, or property . . . ." The District Court properly instructed the jury that violation of this statute constitutes negligence. See Instruction 11, set forth at ¶ 18, herein. The undisputed facts establish that Jackson violated this statute. He intentionally "engaged in a maneuver" at a high speed virtually guaranteed to cause injury in the event of an impact with a known, anticipated hazard. Moreover, in light of Jackson's concession that he could have slowed the speed of the boat as he approached the rock formation but chose not to do so, there is no question that he acted "unreasonably and unnecessarily." Sure, the boat may have been less maneuverable at slow speeds, but the prospect of injury at such speeds would have been slim to none. In sum, Jackson's own admissions prove the statutory violation, and establish his negligence as a matter of law.

¶48 The fact that Jackson had successfully maneuvered through the rock formation at high speeds on previous occasions, which the Court finds significant, is of absolutely no consequence to the statutory violation analysis. He was simply lucky on those occasions. By

20

focusing on the previous success of Jackson's conduct instead of its recklessness, the Court misses the point. Jackson was negligent and violated the law each time he proceeded to drive his boat through an obvious hazard at an excessive speed. The difference is that, this time, he actually harmed the "life and limb" of his passengers.

¶49 In *Craig v. Schell*, we concluded that a driver who violates a traffic statute because he or she reacts to an unanticipated hazard, and injures another person as a result, should be found negligent as a matter of law. *Craig*, ¶ 33. The statutory violation here is as clear here as it was in *Craig*. However, unlike the situation in *Craig,* the hazard here was anticipated and Jackson's conduct in the face of it was informed and intentional. I would therefore conclude that Jackson violated the safe boat operation statute, and was negligent as a matter of law. I would reverse the District Court and remand for the entry of a directed verdict in favor of the plaintiffs. I dissent from the Court's failure to do so.

/S/ PATRICIA COTTER