**Saundra FRIEDMAN and Sidney Friedman, Plaintiffs,**

v.

**NATIONAL PRESTO INDUSTRIES, INC., Defendant.**

**No. 80 C 528.**

United States District Court, E.D. New York.

June 28, 1983.

Israel, Krasner & Madison, New York City (Rita A. Polukord, New York City, of counsel), for plaintiffs.

Quirk & Bakalor, P.C., New York City (Thomas E. Tookey, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

The court has diversity jurisdiction over this products liability case brought by plaintiff Saundra Friedman and her husband. She says she was injured on May 20, 1978 when the cover of a pressure cooker manufactured by defendant blew off. The amended complaint proceeds on theories of negligence, breach of warranty, strict liability for defective design, and failure to warn.

Defendant has moved for orders (1) excluding a certain pressure cooker and its accompanying booklet from evidence at the trial, and (2) "excluding the legal issues of warning" with respect to plaintiff's theories of negligence and strict liability. The booklet is no longer in issue. Plaintiffs do not propose to offer it.

Defendant contends that the pressure cooker said to have caused plaintiffs the injuries was manufactured in 1970, while the one being offered by plaintiffs was made by defendant in 1979. This later model, unlike the earlier one, has a device that locks the cover of the cooker while there is pressure in it. Defendant objects

to its introduction, citing Federal Rules of Evidence 403 and 407.

Rule 403 provides, in pertinent part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." According to the notes of the Advisory Committee, the nine rules that follow this rule including Rule 407, are "concrete applications" of Rule 403, evolved for particular situations and reflecting the policies underlying that rule.

Rule 407 in its first sentence makes inadmissible evidence of subsequent remedial measures "to prove negligence or culpable conduct in connection" with the event in issue. The rule's second sentence does not require the exclusion of such evidence "when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

The Advisory Committee Notes to Rule 407 state that, while it is "possible" to infer an "admission" of previous negligence or culpable conduct from the taking of remedial measures, the inference is not strong because such conduct "is equally consistent with injury by mere accident or through contributory negligence." Indeed, the Advisory Committee rejected "the notion that 'because the world gets wiser as it gets older, therefore it was foolish before,'" as Baron Bramwell put it. It seems clear, however, that the strength of the inference will vary with the circumstances of the case. The other ground for exclusion, described by the committee as "more impressive," rests on the social policy of encouraging, or at least not discouraging, the taking of steps in furtherance of added safety.

As noted, Rule 407 does not require the exclusion of evidence of subsequent measures when "offered" for a purpose other than "to prove negligence or culpable conduct," for example, when offered, as plaintiffs do here, to prove the "feasibility of precautionary measures, if controverted." Plaintiffs say the 1979 model is admissible

to show an alternative design that defendant could have adopted in 1970.

To some extent Rule 407 may be ambiguous. To offer evidence of subsequent remedial measures to show feasibility may well be to offer evidence to "prove" at least one element of a negligence claim. For example, evidence of the feasibility of precautionary measures may be, and often is, pertinent to the question of whether a risk is reasonable.

■ To the extent that a defendant's fault, his "culpability," plays a part in the determination of liability in a strict products liability claim, a similar ambiguity exists. Under New York law the plaintiff in a design defect strict products liability case must still prove the culpability of the defendant.

■ A claim in strict products liability lies "where a manufacturer places on the market a product which has a defect that causes injury." *Robinson v. Reed-Prentice Division,* 49 N.Y.2d 471, 478, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440, 443 (1980). One species of defect is an improper design, that is, a design that "presents an unreasonable risk of harm. . . . [T]he ultimate question in determining whether an article is defectively designed involves a balancing of the likelihood of harm against the burden of taking precaution against that harm. . . ." *Id.,* 49 N.Y.2d at 479, 426 N.Y.S.2d at 720, 403 N.E.2d at 443. Of course, the burden of taking precautions depends in part on the feasibility of safer designs at the time the product was marketed. *See, e.g., Opera v. Hyva, Inc.,* 86 A.D.2d 373, 377, 450 N.Y.S.2d 615, 618 (4th Dep't 1982). Feasibility of alternatives in turn depends on the existence of safer designs that are within technological reach and could be substituted without adding expense or subtracting utility to an extent that would outweigh the gains in safety. *See, e.g., Rainbow v. Albert Elia Bldg. Co., Inc.,* 79 A.D.2d 287, 291 n. 2, 436 N.Y.S.2d 480, 483 n. 2 (4th Dep't 1981).

■ New York law thus still holds that design defect liability is predicated on a

finding that the manufacturer knew or should have known of the dangers at the time of marketing. *Micallef v. Miehle Co.,* 39 N.Y.2d 376, 386–87, 384 N.Y.S.2d 115, 121–22, 348 N.E.2d 571 (1976); *Opera v. Hyva, Inc., supra.* Since the question of unreasonable danger is essentially one of negligence, evidence of subsequent measures may be relevant to whether defendant has engaged in "culpable conduct."

Dicta in some cases suggest that New York may be reaching a "true" strict liability for design defects, so that the only question is whether in fact the utility of the design choice outweighs its danger. *See Robinson v. Reed-Prentice Division,* 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980) (citing Restatement (Second) of Torts § 402A); *Caprara v. Chrysler Corp.,* 52 N.Y.2d 114, 124 & n. 6, 436 N.Y.S.2d 251, 256 & n. 6, 417 N.E.2d 545, 550 & n. 6 (1981). If that becomes New York law, the first sentence of Rule 407 would not apply to evidence of subsequent measures in design defect cases. Liability would not depend on culpability, and the evidence would be either irrelevant or pertinent to some other issue.

Rule 407 need not be read to make its two sentences inconsistent. They can be reconciled by interpreting the rule to mean that no evidence may be admitted to prove negligent or culpable conduct unless that evidence is offered for a purpose excepted by the second sentence, for example, as here, to show "feasibility of precautionary measures."

The exception for feasibility does not apply unless it is "controverted." Defendant's motion papers do not disclose its position on that issue. By refraining from arguing that in 1970 it was not technologically and economically feasible to incorporate the locking device in the later model, defendant can preclude its introduction as evidence of feasibility. To do that defendant need not stipulate to feasibility or admit it under F.R.C.P. 36 (assuming that defendant can deny it in good faith). *See Werner v. Upjohn Co., Inc.,* 628 F.2d 848, 855 (4th Cir. 1980); *see also Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, 792 n. 8 (8th Cir.1977). It is enough if defendant agrees that it will not introduce evidence of nonfeasibility or argue it. Plaintiffs could then introduce evidence of feasibility other than subsequent remedial measures and could argue that defendant had not disputed the point.

In the event that the evidence of defendant's subsequent measures is not excludable under Rule 407, the court must then make the analysis required by Rule 403. An initial question is whether a concern to avoid discouraging remedial measures affects this inquiry. Rule 403 makes no mention of adding extrinsic policies to the balance. But it seems rational to do so. *See* 1 J. Weinstein & M. Berger, *supra,* ¶ 403[01] at 403–11. Indeed, this is implicit in the Advisory Committee's comment that the succeeding rules in Article IV are concrete applications of Rule 403. At least Rules 407, 408 (offers to compromise), 409 (payment of medical expenses), and 410 (offers to plead guilty) are based in large part on extrinsic policies.

In applying Rule 403 the factors to be balanced are probative value, prejudice, and discouragement of remedial design changes. Evidence that a safer design has been commercially marketed tends to show the technological and economic feasibility of the alternative design. The probative force does not depend on whether the alternative design was marketed by defendant or another. It does, of course, depend on the time the alternative design was first sold. Only if it was marketed before or at about the same time as the allegedly defective product will the inference of feasibility be solid. Obviously, the probative value of a subsequent alternative design decreases as the interval increases between marketing of the two designs, here almost a decade. The papers on the motion do not indicate whether any relevant technological advances or other changes in circumstances occurred during that time.

Moreover, the court in applying Rule 403 must give weight to alternate means of

proof. If there is evidence of the manufacture before or shortly after 1970 of a pressure cooker with a locking device, that earlier model would be more persuasive evidence of feasibility. Of course, evidence of models of a manufacturer other than defendant would create less danger of unfair prejudice than evidence of those of defendant.

Rule 407 does not require exclusion of the 1979 model when offered as proof of feasibility if that issue is controverted. The court cannot now decide whether it should exclude the evidence under Rule 403 and will determine the question when all of the relevant factors have been developed at trial.

Nothing in this analysis is inconsistent with the holding of *Cann v. Ford Motor Company*, 658 F.2d 54 (2d Cir.1981). That case, which involved an alleged design defect, considered the argument that Rule 407 could not apply at all to claims in strict products liability. At that time, although design defect claims were said to sound in "strict liability," New York law clearly required proof of defendant's culpability, and the court had no need to decide whether subsequent measures were excludable under the first sentence of Rule 407 in a case in which proof of fault was irrelevant. Moreover, the court remanded to the district court to determine whether the evidence was admissible under the second sentence of Rule 407.

■ Defendant's motion to "exclude" issues of duty to warn is without merit. Plaintiffs may maintain inconsistent alternative theories. Contributory negligence may be a jury issue in a design defects case, but it is no longer a bar to recovery. *See Micallef v. Miehle Co., supra.*

■ Defendant's motion to exclude from evidence the 1979 pressure cooker will be determined consistently with this memorandum and order and the showings made by the parties. Defendant's motion to exclude the issue of warnings is denied. So ordered.