William KERN and Dorothy Kern, Plaintiffs,

v.

ROEMER MACHINE & WELDING CO., Defendant.

ROEMER MACHINE & WELDING CO., Third–Party Plaintiff,

v.

FRYE COPYSYSTEMS, INC., Third–Party Defendant.

No. 91 Civ. 0615 (RWS).

United States District Court, S.D. New York.

Nov. 2, 1992.

As Amended Dec. 16, 1992.

Finkelstein, Levine, Gittelsohn & Tetenbaum, Newburgh, NY, for plaintiffs; Elliot S. Tetenbaum, Eleanor L. Polimeni, George A. Kohl, 2nd, of counsel.

Werner & Kennedy, New York City, for defendant and third-party plaintiff; Samuel D. Levy, John M. Nonna, of counsel.

Bigham Englar Jones & Houston, New York City, for third-party defendant; George S. Evans, Jr., of counsel.

OPINION

SWEET, District Judge.

The defendant and third-party plaintiff Roemer Machine & Welding Co. ("Roemer") has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. and Civ.R. U.S.D.C. 3 against plaintiffs William and Dorothy Kern (the "Kerns"). Third-party defendant Frye Copysystems, Inc. ("Frye"), joins the motion for summary judgment.

The Kerns have moved for an order pursuant to Fed.R.Civ.P. 12(f) & (c) striking the "Third Affirmative Defense" of the defendant's answer on the grounds that Roemer did have substantial input and responsibility

for the design of the allegedly defective machine.

For the reasons given below, the defendant's motion for summary judgment is granted, and the plaintiffs' motion is denied.

### The Parties

Roemer is a custom machine shop which constructs and assembles machines used for, *inter alia,* the inking of carbon paper.

Frye is a manufacturer located in Newburgh, New York.

William Kern is a machine operator formerly employed by Frye. Dorothy Kern is his wife.

### The Pleadings

This case is a personal injury action, including allegations of loss of consortium, stemming from an accident which occurred at Frye's Newburgh, New York plant on February 16, 1990. Kern, who had been employed full-time by Frye for the past seven years as a coating machine operator but had been trained on this machine for thirty days, was cleaning a pressure roll of the running machine with a rag. The rag apparently became caught and dragged his hand between the rolls, causing severe and permanent injuries to his right hand. Mr. Kern does not specifically recall how the accident occurred and there were no witnesses. The Kerns' recovery against the employer Frye for his injuries suffered on the job is limited to the relief allowed by workman's compensation, N.Y. Workman's Compensation Law § 1 *et seq.* (McKinney 1992).

The Kerns allege three causes of action against Roemer, for negligence, breach of warranty, and strict products liability. Each claim is premised on the contention that Roemer manufactured a product whose defective design failed to include a cover or guard that would prevent the worker's hand from getting caught, or dual controls which would require both hands to move the rollers. Since Roemer maintains that Kern's injuries were caused by Frye's failure to supervise him adequately, Roemer has impleaded Frye as a third-party defendant.

Roemer has interposed affirmative defenses alleging, first, that the Kerns do not have personal jurisdiction over Roemer; second, that the Kerns have failed to state a claim upon which relief can be granted; third, that the machine was not manufactured according to Roemer's directions; and fourth, that any injuries sustained by Kern were caused by his own negligence and that he assumed the risk.

### The Motions

Roemer has moved for summary judgment on the grounds that since Roemer did not design, install, or repair the machine, there can be no genuine issue of material fact which would make Roemer responsible for the defective design alleged to be the cause of the plaintiff's injuries. The Kerns have cross-moved for summary judgment to strike Roemer's defense third affirmative defense that it had no input into the design of the machine.

### Discussion

### Summary Judgment

The standard to be applied in determining motions for summary judgment is well known.

> Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.

*Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991); *see also Bay,* 936 F.2d at 116.

To defeat a motion for summary judgment, the party opposing the motion must "do more

than simply show that there is some metaphysical doubt as to the material facts" as to issues on which the moving party has carried its burden or those on which the non-moving party bears the burden of proof. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Rather, he must establish the existence of enough evidence such that a jury could return a verdict in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–51, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### Responsibility for Design is a Requirement for Strict Product Liability

■ "A claim in strict product liability lies where a manufacturer places on the market a product which has a defect that causes injury," *Friedman v. National Presto Industries, Inc.*, 566 F.Supp. 762, 764 (E.D.N.Y. 1983). The purpose of the policy is to put pressure on the manufacturer of the defective product, "who alone has the practical opportunity, as well as a considerable incentive, to turn out useful, attractive, safe products." *Codling v. Paglia*, 32 N.Y.2d 330, 341, 345 N.Y.S.2d 461, 468, 298 N.E.2d 622, 627 (1973). Defective products includes defects in the design of the product, although (unlike manufacturing defects) these products are made in the precise manner intended by the manufacturer. Since no product may be made completely accident proof, however, determining whether an article is defectively designed involves a balancing of the likelihood of harm against the burden of taking precaution against that harm. *Micallef v. Miehle Co.*, 39 N.Y.2d 376, 386, 384 N.Y.S.2d 115, 121, 348 N.E.2d 571, 577 (1976).

■ New York courts have recognized as a manufacturer's defense that if the machine was assembled free of a manufacturing defect completely according to the plans and specifications of the buyer, the manufacturer will not be strictly liable for an injury caused by the product. "[N]o public policy can be served by imposing liability on a manufacturer of specialized parts of a highly technical machine, particularly when, as here, the parts were created in accordance with the design, plans and specifications of the owner and assembler of the unit." *Munger v. Heider Mfg. Corporation*, 90 A.D.2d 645, 646, 456 N.Y.S.2d 271 (3d Dept.1982). *Zampardi v. Miller*, Prod.Liab.Rep. (CCH) ¶ 12,467, 1990 WL 68871 (E.D.N.Y. May 17, 1990), distinguishes the manufacturer of an entire product from the manufacturer of component parts, but the court indicates that this is due to a belief that Miller, as manufacturer, could be charged with failure to warn potential users of foreseeable harm. If Roemer designed the coating machine solely according to the instructions and blueprints provided by Frye, then an essential element to the Kerns' cause is wanting.

Finally, the Kerns' contention that Roemer, even if it had no input into the design of the machine, is strictly liable because the design revealed an obvious design defect which Roemer could easily have corrected has no merit. All parties admit that the machine has run without causing serious injury for nearly twenty years. At most, Roemer's failure to correct amounts to negligence. However, "[t]he two theories of negligence and strict liability for design defect are, in New York, almost functionally equivalent." *DeRosa v. Remington Arms Co.* 509 F.Supp. 762; 766 (E.D.N.Y.1981). Therefore, both claims for negligence and strict liability will turn on the same balancing test: whether the inherent dangerousness of the design outweighed its utility. This still leaves the factual question of whether Roemer, as manufacturer, was responsible for the machine's design.

### There are No Material Facts to Contravene Roemer's Denial of Design Responsibility

■ It is conceded that the coating machine in question had originally been built to Frye's specifications by Roemer in or about 1969 or 1970. Frye's employees then inspected the machine in Roemer's factory. After their approval had been obtained, the machine was disassembled and shipped to Frye in Newburgh, where it was reassembled and run. In the course of the twenty-odd years that it has worked, Frye has been exclusively responsible for all replacement, repair and maintenance parts, including certain design changes to upgrade the electric motor control in 1984 or 1985.

William Cade, former president of Roemer (now retired), worked for Frye Manufacturing, the immediate predecessor in interest of Frye Copysystems, as a design engineer from 1954 to 1958. He was specifically hired

by Frye to design a rotary coating machine, "the type of Coating machine that I understand is the subject matter" of this lawsuit. He completely designed and built each of the rotary coating machines used by Frye without any input from Roemer, which at the time had no engineers on its staff. Cade then went to work as an engineer at Roemer, but testified that the same procedure was still followed: Frye would submit designs, Roemer would build the machine, Frye would then send an engineer to inspect the machine, and then the machine would be disassembled and shipped to Frye.

Since Cade, the original designer of the machine, completed the design while at Frye, and since Roemer made changes after inspection only according to instructions left by the inspector from Frye, there are no material facts presented to support an inference that Roemer had some input into the machine.

Further, given the passage of time since the manufacture of the machine in question, documentary evidence is controlling. The blueprints of the machine were prepared by Frye, although some were replicated by Roemer and thus bear its name. The only documents claimed by the plaintiffs to cast a design burden on Roemer were certain design specifications which are alleged to require Roemer to design portions of the machine. A review of the documents reveals that Frye in fact directed the nature of the design and that Roemer merely assembled the machine, as the only person with knowledge of the construction of the machine testified by deposition.

Samples of the specifications with respect to design state as follows:

*Inking Unit:* Redesign transfer roll drive using either a socket or square drive. Increase the bearing on the rubber roll to a 99509.

*Cooling Rolls:* Increase all journals to 2". Redesign tie bar for allowing alternate threading routes. Open-up the frame beneath the cooling rolls for access. Install a 3" diameter tie bar with 1½ threads thru the frame beneath the inspection light.

*Rewind:* Increase tie bar roller shoulder bolt to 1" diameter. Maintain 4" clearance between all idlers.

Technical instructions such as these do not lend themselves to the thesis that Roemer was responsible for the design of the machine.

In determining whether a genuine issue of fact exists, the court must draw all permissible inferences in favor of the nonmoving party. Nonetheless, if the opponent cannot succeed in establishing "uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Since the Kerns cannot demonstrate such uncertainty, summary judgment is appropriate.

It is so ordered.