■ CITY OF COHOES, Respondent, v KESTNER ENGINEERS, P. C., et al., Defendants, and SUBURBAN PROPANE GAS CORPORATION, a Division of QUANTUM CHEMICAL CORPORATION, et al., Respondents, and ONAN CORPORATION, Appellant. [640 NYS2d

917] —Cardona, P. J. Appeal from that part of an order of the Supreme Court (Kahn, J.), entered June 1, 1995 in Albany County, which denied defendant Onan Corporation's motion for summary judgment dismissing, *inter alia*, the complaint against it.

This case involves an explosion occurring on July 7, 1989 at a sewer pump station owned and operated by plaintiff, the City of Cohoes (hereinafter the City).[1] The station was destroyed and two employees were injured. One of the main issues in this litigation is how the explosion occurred and who should be held responsible. When the station was built, the general contractor was defendant Schultz Construction, Inc. and the engineering firm was defendant Kestner Engineers, P. C. Included in the plans was a backup generator manufactured by defendant Onan Corporation whose local distributor was defendant Power Plant Equipment Corporation. The generator was apparently fueled by liquid propane gas and allegedly serviced and inspected by defendant Suburban Propane Gas Corporation.[2] The generator was placed inside the pump station and its gas supply line was located underground. Based on an examination of the underground pipe, expert reports suggested that a lack of corrosion protection led to a leak in the pipe, allowing propane to escape and causing the explosion.

At issue is Supreme Court's denial of Onan's motion for summary judgment. Onan claimed, *inter alia*, that the generator it supplied was only a component part of the station and there was no evidence that the generator was defective. Onan's motion was opposed by, among others, Suburban, the City, Schultz and defendant Joseph A. Kestner, Jr. Supreme Court rejected Onan's arguments prompting this appeal.[3]

According to Onan, it did nothing more than supply the standby generator. It claims that there is no proof that it was involved in the installation of the generator or in the design of the station. We disagree. Even if we accepted Onan's assertion that it came forward with sufficient admissible proof to war-

---

1. We note that this matter has previously come before this Court concerning other parties and different issues (*see, Ashline v Kestner Engrs.*, 219 AD2d 788).

2. Suburban is a division of defendant Quantum Chemical Corporation. For the sake of simplicity references to Suburban will include Quantum unless otherwise indicated.

3. It appears that since Supreme Court's order, Schultz and Kestner have been granted summary judgment. These parties are, therefore, not participating in this appeal. Although the City initially opposed Onan's motion and remains in the case, it has not filed a brief on appeal. The only defendant who has filed a responding brief is Suburban.

rant judgment in its favor as a matter of law (see, *Wagner v Baird*, 208 AD2d 1087, 1088), sufficient evidence was presented in opposition to Onan's motion to raise triable issues of fact as to its knowledge of the specifications and design of the station (see, *supra*, at 1088).

It appears that representatives of Power Plant, Onan's distributor, were on-site and involved in the installation and testing of Onan's generator. Onan agrees but contends that the representatives were not its agents, nor was there evidence of an agency relationship between Power Plant and Onan. Thus, Onan contends that Power Plant's knowledge concerning the station's construction cannot be imputed to Onan. Our review of the record, however, reveals a question of fact regarding Onan's relationship with Power Plant. Even if there was no actual agency relationship between Onan and Power Plant, there is a question as to whether there was an agency of apparent authority. Such an agency may be created by conduct (see, *Standard Bldrs. Supplies v Gush*, 206 AD2d 720, 721), which conduct may be established by words or actions of a principal conveyed to a third party if it gives rise to a reasonable basis by the third party that an agency was created (see, *Hoysradt v Nilles Ford-Mercury*, 168 AD2d 824, 825). If the third party's reliance is reasonable, apparent authority may exist even if the principal did not intend to create it (see, *Standard Bldrs. Supplies v Gush*, *supra*, at 721).

Here, documentary evidence revealed that when the generator was purchased, the buyers received a bid submittal, printed on paper bearing the Onan trademark, listing the specifications of the actual generator which would be installed at the station and additional services that would be provided by Onan if the generator was purchased. Specifically, one portion of the submittal stated: "Onan's highly skilled Factory-Distributor team brings over 50 years of successful experience to your job. Your local Onan Distributor is a factory trained specialist capable of assisting you with every phase of the installation. He's backed-up by an Onan field engineer in your area and a fully-staffed, factory engineering department equipped to provide total support from technical literature to engineering test data." The submittal also included detailed diagrams of the standby generator and design specifications of how it was to be implemented. Although Onan claims that it was unaware of Power Plant's detailed submittal, the submittal was prepared and presented on Onan forms, thus raising a question of fact as to whether Power Plant was acting as Onan's agent as well as whether Onan had knowledge of the alleged improper design

of the station. In addition, employees of Kestner Engineering and Schultz, in their pretrial testimony, stated that when the generator was installed, several representatives of Onan were at the site assisting in its location and testing. According to one employee, these representatives were Power Plant employees. The employees believed that the individuals from Power Plant were working under Onan's authority. This evidence, coupled with the documentary evidence, raises questions of fact of how the individuals installing the generator were affiliated with Onan and whether they were acting under its apparent authority.

Next, Onan contends that it was a component manufacturer without knowledge of the design of the station and, therefore, it was not liable for failing to warn of any inherent dangers in the station. It is true that a component manufacturer who produces a product in accordance with the buyer's specifications, which fail to reveal any inherent danger, will not be held liable in a strict products liability action (*see, Leahy v Mid-West Conveyor Co.*, 120 AD2d 16, 18, *lv denied* 69 NY2d 606). For this principle to apply, however, it is critical that the component manufacturer not be aware of or take part in the design and construction of the assembled unit (*see, supra*, at 18). Initially, it is questionable whether Onan could be considered a component manufacturer. Although it claims that the generator was simply a component part of the whole station, this is not the same as a manufacturer making a specific component for use as part of a completed machine (*see, e.g., Leahy v Mid-West Conveyor Co., supra*). The generator itself was composed of thousands of separate parts and was to be used *in* the station as opposed to being part of an actual machine.

Nevertheless, even accepting that the principle is applicable, Onan's argument fails given the question of its relationship with Power Plant. As noted, the submittal prepared by Power Plant stated that Onan's "Factory-Distributor team" would assist in every phase of the generator's installation. The submittal included a diagram of the design and specifications to implement that particular generator at the station. An employee of Kestner Engineering stated that he visited Onan's facility while construction of the station was in its design stages and discussed the fuel supply for use in the generator with Onan representatives. Kestner testified that he relied on Onan specifications in setting up the standby generator. Power Plant's president testified that it received the specification sheet from Onan. This evidence raises issues of fact as to whether Onan took part in the design and assembly of the station.

Onan also contends that it was entitled to summary judgment on the issue of adequate warnings. We note that the issue of whether warnings were sufficient is generally a question of fact for trial (see, *Village of Groton v Tokheim Corp.*, 202 AD2d 728, 730, *lv denied* 84 NY2d 801). Onan is basically contending that Kestner erred in putting the pipe underground and the generator inside the station, and in using propane gas. According to Onan, its instructions were to the contrary. It pointed to technical bulletins recommending that backup generators be placed in separate buildings. Kestner, however, stated that Onan knew or should have known where the generator would be placed based on the diagram in Power Plant's submittal, which indicated the placement of the generator inside the station. Kestner said that Onan was aware of the submittal and knew of Kestner's plans. Kestner claimed that it was up to the manufacturer of the generator to select a fuel and the piping. Another employee of Kestner Engineering averred that use of liquid propane gas was part of the system designed and supplied by Onan. In light of this evidence, questions of fact exist on the issue of the adequacy of the warnings.

As a final matter, we agree with Onan that the breach of warranty cause of action by the City is time barred under the four-year Statute of Limitations set forth in UCC 2-725 (1). A cause of action for breach of a contract of sale accrues when tender of delivery is made (see, *Heller v U.S. Suzuki Motor Corp.*, 64 NY2d 407, 410). The generator was purchased in 1977 and the City's action was commenced well beyond the four-year time period. Therefore, Supreme Court's order must be modified to that extent.

Crew III, White, Casey and Peters, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion regarding plaintiff's cause of action for breach of warranty; motion granted to that extent and said cause of action dismissed against defendant Onan Corporation; and, as so modified, affirmed.