■ CHARLES DALEY et al., Appellants, v GEMINI BAKERY EQUIPMENT COMPANY, Respondent. (And Two Third-Party Actions.) [643 NYS2d 106]

Plaintiff Charles Daley was employed by third-party defendant Denk Baking Corporation to operate a foreign manufactured dough dividing machine which had been imported by defendant Gemini Bakery Equipment Company. The divider was basically a machine with an opening at the top, into which dough would enter, to be cut and divided by a large moving blade. The machine included provision for the attachment of a "hopper". Approximately ten months after Gemini sold and installed the divider, Denk purchased and installed a hopper, a funnel-shaped reservoir which held and directed dough into the divider, on top of the divider. The hopper had a door in its side, through which an operator could manually reach to clean old dough off the divider blade, a procedure which could only be safely accomplished if the divider was not in operation, for obvious reasons.

Neither the divider nor the hopper was equipped with an interlock connection or device which would turn the divider off if the hopper door was open. On January 1, 1989, plaintiff reached into the divider through the hopper door to clean the blade, and the divider either was running, or somehow was activated after he inserted his right hand, which was partially severed at the wrist.

Gemini moved for summary judgment on the ground that "*the hopper is the instrument which caused the injury* and is defective" (emphasis in original). In opposition to the motion, plaintiff submitted an affidavit from an expert to the effect that the divider did not contain an electrical interlock switch for the hopper access door, that the absence of an interlock is a violation of Industry Standard and Practice, and that the accident was caused by, *inter alia*, the absence of a safety interlock switch in the dough divider.

The IAS Court nevertheless granted Gemini's motion for summary judgment, reasoning that "[w]hile it is clear that Gemini manufactured the divider with a bolt pattern for the attachment of a hopper there is no proof that Gemini had any knowledge of the fabrication and design of the hopper. Therefore, it could not provide for a safety interlocking switch." We find this conclusion to be a non sequitur.

Gemini argues that it cannot be held responsible for

plaintiff's injury because the divider "was designed and manufactured without defect." However, the assumption that the divider had no design defect assumes the very fact that requires a determination after trial. A product is "defective" if, when it left the hands of the manufacturer, it was "not reasonably safe" (*Rosado v Proctor & Schwartz*, 66 NY2d 21, 25). Determining whether an article is defectively designed involves a balancing of the likelihood of harm and the gravity of such harm as may occur, against the burden of taking precaution against the harm (*Micallef v Miehle Co.*, 39 NY2d 376, 386; *Kern v Roemer Mach. & Welding Co.*, 820 F Supp 719, 721 [SD NY] [applying New York law], *affd without opn* 996 F2d 302).

The likelihood and severity of the harm in putting into commerce a cutting machine of this type without a safety interlock may be said to be patent and are not seriously controverted by defendant. A critical issue, however, is whether or not it was electronically or otherwise unfeasible or impossible to incorporate an appropriate locking mechanism into the machine which, as manufactured, included provision for the attachment of a hopper. Defendant submitted no evidence at all, much less expert evidence, to fulfill its burden of establishing that issue in its favor as a matter of law as it was required to do as the party moving for summary judgment.

We recognize that there is authority holding that the manufacturer of specialized parts of a highly technical machine, created in accordance with the design of the owner and assembler of the unit, will not be held liable for resulting injuries (*see, Munger v Heider Mfg. Corp.*, 90 AD2d 645, 646). However, *Munger* involved the manufacturer of component *parts* of an unassembled paper machine where the plans and specifications did "not reveal any inherent danger either in the component or in the assembled unit" (90 AD2d, *supra,* at 645). That surely is not the case here. Gemini was not the provider of a "part" of a larger machine, but rather the entire machine including all its moving and dangerous parts, including provision for the installation of a hopper. (*See, Zampardi v Miller Johannisberg GmbH*, 1990 WL 68871 [ED NY, May 17, 1990, Spatt, J.].)

Gemini's "modification" argument based on *Robinson v Reed-Prentice Div.* (49 NY2d 471) was not only improperly advanced for the first time in its reply papers, it is not even relevant, because no one made Gemini's "safe" machine unsafe by a substantial modification after delivery. There is an issue of fact whether the divider was unsafe from the outset because the divider was not designed and manufactured with a safety

interlock, which Gemini did not establish was unfeasible, or as the Supreme Court erroneously concluded, impossible. Concur—Sullivan, J. P., Rosenberger, Ellerin, Rubin and Nardelli, JJ.