OPINION OF THE COURT
John G. Connor, J.
*934 Defendant, Smalis,. Inc. (hereinafter Smalis), moves for an order pursuant to CPLR 3212 granting summary judgment dismissing the plaintiffs’ complaint. Plaintiffs oppose the instant motion on the grounds that material issues of fact exist that preclude summary judgment.
It is well settled that on a motion for summary judgment the moving party has the initial burden to make a prima facie showing that it is entitled to judgment as a matter of law. Only when the initial burden is met does the burden shift to the opposing party to produce evidentiary proof, also in admissible form, to raise material triable issues of fact requiring trial of the action. (See, Miccio v Skidmore Coll., 180 AD2d 983 [3d Dept 1992]; Tessier v New York City Health & Hosps. Corp., 177 AD2d 626 [2d Dept 1991]; Wilder v Rensselaer Polytechnic Inst., 175 AD2d 534 [3d Dept 1991].)
Although summary judgment may be granted in negligence actions, the question of whether a defendant’s acts or omissions constitute negligence is inherently a question of fact in all but the most egregious instances. (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:8, at 316.) Summary judgment is a drastic remedy and should not be granted if there is any doubt as to the existence of a triable issue of fact. (Moskowitz v Garlock, 23 AD2d 943 [3d Dept 1965].) The court’s function when deciding a motion for summary judgment is issue finding rather than issue determination. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) If an issue is arguable trial is needed and the case may not be disposed of summarily. (Barrett v Jacobs, 255 NY 520 [1931].) If the court has any doubt as to whether a triable issue of fact exists, summary judgment should be denied. (Doliendo v Johnson, 147 AD2d 312 [2d Dept 1989].)
The instant action arose in connection with the plaintiff’s use óf a conveyor belt machine in the course of his employment with the third-party defendant, Cycletech (hereinafter Cycletech). Cycletech is in the business of recycling rubber from old tires. Plaintiffs job was to load truck tires onto a conveyor belt that carried the tires to a shredder designed to reduce them to recyclable material. The conveyor belt machine was manufactured by Smalis and sold to Cycletech in or about 1993. Plaintiff suffered a traumatic amputation of his left arm when the same was pulled into the conveyor belt machine on October 28, 1994. At the time of the accident plaintiff was attempting to dislodge a piece of rubber that became wedged in the conveyor belt. Plaintiff alleges that the machine was off at *935 the time he reached to dislodge the piece of rubber and that his arm was pulled into the machine when the same started up without warning or explanation.
Cycletech admittedly modified the conveyor belt machine prior to plaintiffs employment by installing on/off toggle switches on both sides of the machine and by removing the tail pulley guard that was shipped on the machine. Smalis argues that the modifications by Cycletech were substantial and were the proximate cause of plaintiffs injuries. Plaintiff contends that the conveyor belt machine was defective as shipped, and that Smalis is liable for plaintiffs injuries under the theories of negligence, strict liability and breach of warranty.
Under the facts and circumstances of the present case summary judgment is not appropriate. Plaintiff submitted an affidavit from its expert opining that the conveyor belt machine was defectively designed and manufactured by Smalis. Plaintiffs expert avers that the conveyor belt system should have been designed and manufactured with an interlock device that would automatically cut power to the machine in the event the same was being operated without the tail pulley guard. Furthermore, plaintiff’s expert contends that the product lacked adequate warnings or instructions regarding the risks and hazards inherent in the use of the system without a tail pulley guard or in the maintenance of the system. Plaintiffs expert also points out the ease with which the tail pulley guard could be removed, that the same was not structurally adequate for its intended use, and that it was not identified as a guard by the manufacturer nor did it come with instructions as to its use.
In fact, Cycletech’s representative testified that he thought the tail pulley guard was a shipping guard because of its light construction and because when the same was attempted to be used on a previous machine it was crushed by a truck tire and created a hazard by jamming the conveyor belt machine. Consequently, the guard was removed from all future machines upon receipt by the employer. The only warning or instructions forwarded with the machine to Cycletech was a generalized warning for employees to stay clear of the machine during operation. There were no instructions regarding the installation and use of the guard or the need to have the guard in place during operation; nor were there any instructions regarding the possibility that the machine may start up without warning or any instructions for the clearing of jams in the machine.
*936 If a key safety feature is destroyed by the substantial modification of a product by the plaintiff’s employer, then the manufacturer may not be held responsible for the plaintiff’s injuries. (See, Robinson v Reed-Prentice Div., 49 NY2d 471 [1980].) Unlike in Robinson, however, Cycletech did not modify the machine to bypass an interlock device, because there was no interlock device mechanism installed on the machine by Smalis. (See, supra.) As in Daley v Gemini Bakery Equip. Co. (228 AD2d 210 [1st Dept 1996]), there is an issue of fact as to whether the conveyor belt machine was unsafe from the outset because of defendant’s failure to design and manufacture the machine with a safety interlock device that would preclude the operation of the machine without the tail pulley guard in place.
The cases cited by defendant are distinguishable from the present case. In Alvarado v Martin Maschinebau Gmbh & Co. (236 AD2d 345, 346 [2d Dept 1997]), the Court based its decision on the fact that plaintiff’s expert opinion was inadequate to raise an issue of fact. Here, however, the affidavit of plaintiff’s expert is sufficient to raise issues of fact as to whether the failure to include an interlock device in the conveyor belt machine was a design and manufacturing defect that caused the plaintiff’s injuries, and whether Smalis provided adequate instructions and warnings of all the latent risks and hazards connected with the intended uses, and reasonably foreseeable misuses, of the conveyor belt machine. Defendant did not submit expert proof in rebuttal of plaintiff’s expert’s opinion, but rather submitted a reply affirmation from counsel. In Wood v Peabody Intl. Corp. (187 AD2d 824 [3d Dept 1992]), although plaintiff’s employer altered the locking mechanism on a trailer manufactured by defendant, the employer was well aware of the importance of said locking mechanism since it specifically included the requirement for the same in its bid specifications and the maintenance manuals provided by the manufacturer detailed the importance of the safety locks in making sure that no unforeseen accidents occurred. Contrastingly, in the instant case, the employer did not even know whether the guard included with the conveyor belt machine was a shipping guard or a guard to be used to safely operate the machine, and from its prior experience in using the guard, and the discovery that its use could create a hazard itself, the employer was led to conclude that the guard was designed to be left off of the machine. Unlike in Wood, the employer received no warnings or instructions regarding the use of the *937 guard or the operation of the machine without the same in place. (Supra.)
Accordingly, defendant’s motion for summary judgment is denied without costs.