■ FLEX-O-VIT USA, INC., Appellant, v NIAGARA MOHAWK POWER CORPORATION et al., Defendants, and RODMAN VENTILATING CO., INC., Respondent. (Appeal No. 1.) [739 NYS2d 785] —Appeal from an order and judgment (one document) of Supreme Court, Erie County (Fahey, J.), entered March 5, 2001, which granted the motion of defendant Rodman Ventilating Co., Inc., for summary judgment.

It is hereby ordered that the order and judgment so appealed from be and the same hereby is unanimously reversed on the law with costs, the motion is denied and the fourth amended complaint and cross claims against defendant Rodman Ventilating Co., Inc. are reinstated.

Memorandum: Plaintiff commenced this action seeking to recover damages caused by a fire that occurred on July 4, 1995 at its manufacturing plant. The fourth amended complaint sets forth causes of action against Niagara Mohawk Power Corporation (Niagara Mohawk) for negligence and gross negligence; against Shipman Industries, Incorporated (Shipman) and Louvers & Dampers, Inc. (Louvers) as successor to Shipman for negligence, strict products liability, and breach of warranty; and against Rodman Ventilating Co., Inc. (Rodman), Avnet Machinery (Avnet) and National Diecasting Machinery Division of Racine Federated, Inc. (Racine) as successor to Avnet for negligence and strict products liability. Niagara Mohawk commenced a third-party action seeking indemnification or contribution from Hamburg Sheet Metal, Inc. (Hamburg).

According to plaintiff's pleadings and expert witness affidavits, the immediate cause of the fire was the overheating of combustible materials in the area between the ceiling and roof of the manufacturing plant near a ventilation duct that vented smoke and hot gases from a die cast machine. The heating unit of the die cast machine heated molten zinc to a temperature of 785 degrees Fahrenheit. Avnet manufactured the die cast machine and sold it to plaintiff in 1983. Racine purchased the assets of Avnet in 1985. In 1988, when the die cast machine was relocated within plaintiff's manufacturing plant, Hamburg installed a ventilation system for the purpose of venting smoke and hot gases produced by the heating unit of the die cast machine. The system, consisting of a hood, metal ductwork and three-phase electric fan, vented those exhaust fumes through the ceiling and roof of the plant. Rodman sold the ventilation fan to Hamburg. The fan was manufactured by Shipman, which sold its assets to Louvers in 1994.

Plaintiff asserts that the series of events leading to the fire began when the three-phase supply of electricity to the plant was reduced to a single-phase supply due to the failure of a connecting clamp on one of three Niagara Mohawk power lines. The three-phase electric motor powering the ventilation fan became overheated and failed due to the supply of single-phase current rather than three-phase current. After 47 minutes of single-phase current, Niagara Mohawk disconnected the power entirely, made the necessary repairs, and restored full power to the plant. Upon restoration of power, the die cast machine automatically restarted but, because the motor powering the ventilation fan did not function, hot gases accumulated within the ventilation duct, generating heat that ignited "surrounding combustibles" in the area between the ceiling and roof. No one was present in the plant during the period in which those events occurred because of the Fourth of July holiday. Plaintiff alleges that the fire resulted from the negligence of Niagara Mohawk in using an improper clamp to connect the power lines. In addition, plaintiff asserted causes of action for negligence and strict products liability against the remaining defendants alleging that they, inter alia, failed to ensure that the ventilation fan and die cast machine were equipped with an interconnect or other failsafe device that would shut off the die cast machine in the event of the failure of the ventilation fan, and failed to warn of the need for such a failsafe device.

All defendants except Shipman moved or cross-moved for summary judgment dismissing the fourth amended complaint and cross claims against them, and Supreme Court granted

the motions and cross motion. In addition, the court granted Hamburg's cross motion seeking summary judgment dismissing the third-party complaint.

Plaintiff contends that the court erred in concluding that the only possible theory of liability against Niagara Mohawk is gross negligence and in dismissing the fourth amended complaint and cross claims against Niagara Mohawk. We agree. The contract for the provision of electricity by Niagara Mohawk to plaintiff includes by reference Niagara Mohawk's rate tariff, Tariff 207 of the Public Service Commission. Section 3.7.1 of that tariff provides: "In case the supply of service shall be interrupted or irregular or defective or shall fail from causes beyond Company's control or because of the ordinary negligence of Company, its employees, servants or agents, Company will not be liable therefor[ ]." Tariff 207 has been effectively amended, however, by 16 NYCRR 218.1 (c), which requires that "[p]rovisions limiting the liability of [a power] company for any damages resulting from the negligence of the company in connection with the supplying or use of electricity" be eliminated from the tariff schedules of all companies furnishing electricity. Thus, "utility companies are not absolved from liability for ordinary negligence claimed as the result of the *supply or use of electricity*, as opposed to damages caused by the interruption of the supply of service" (*Zoller v Niagara Mohawk Power Corp.*, 137 AD2d 947, 950; *see, Bowen v Niagara Mohawk Power Corp.*, 183 AD2d 293, 295-296). Here, plaintiff alleges that Niagara Mohawk is liable based upon a defective supply of single-phase rather than three-phase electricity that caused the failure of the ventilation fan motor, which in turn caused the overheated ducting that ignited the fire. Plaintiff's theory of liability against Niagara Mohawk therefore is predicated upon the defective supply rather than the interruption of electricity, and Niagara Mohawk may be held liable for ordinary negligence (*see, Bowen v Niagara Mohawk Power Corp., supra* at 295-296; *Zoller v Niagara Mohawk Power Corp., supra* at 950). Contrary to the contention of Niagara Mohawk, there is no distinction between the defective supply of excess voltage involved in *Bowen v Niagara Mohawk Power Corp. (supra)* and *Zoller v Niagara Mohawk Power Corp. (supra)* and the allegedly defective supply of inadequate voltage in this case.

Niagara Mohawk failed to submit any evidence establishing that it was not negligent, and thus we conclude that the court erred in granting its motion with respect to the cause of action for ordinary negligence. Concomitantly, we conclude that the

court erred in granting the cross motion of Hamburg seeking summary judgment dismissing the third-party complaint of Niagara Mohawk. In view of our determination that the applicable theory of liability is ordinary negligence, which applies both to plaintiff's action against Niagara Mohawk and the cross claims, we conclude that the court properly dismissed the cause of action for gross negligence.

The court also erred in granting the motion of Rodman, the seller of the ventilation fan. Rodman met its initial burden by submitting the affidavit of its expert, who stated that the ventilation fan was not defective and that, in accordance with custom and practice in the trade, Rodman had no design responsibility for the operation of the ventilation fan in conjunction with other machinery. In opposition to the motion, however, plaintiff submitted the affidavit of its expert, who stated that the ventilation fan was defectively designed and that custom and practice required that Rodman provide for or recommend a failsafe device. Thus, plaintiff raised issues of fact whether the ventilation fan was defective and whether there was a failure to warn (*see, Daley v Gemini Bakery Equip. Co.*, 228 AD2d 210, 212-213; *City of Cohoes v Kestner Engrs.*, 226 AD2d 914, 917-918; *see generally, Liriano v Hobart Corp.*, 92 NY2d 232, 241-242). Rodman's further contention that plaintiff cannot recover in tort for "economic loss, whether due to injury to the product itself or consequential losses following therefrom" (*Bocre Leasing Corp. v General Motors Corp. [Allison Gas Turbine Div.]*, 84 NY2d 685, 693), is without merit. Plaintiff's alleged damages do not arise from the "failure of the [ventilation fan] to perform as intended" (*Bristol-Myers Squibb, Indus. Div. v Delta Star*, 206 AD2d 177, 180). Rather, plaintiff's damages arise from an accidental fire that caused substantial direct and consequential damages, allegedly due to a defective and unsafe product marketed by Rodman. Thus, plaintiff's action in tort is "not foreclosed by the nature of [its] damages" (*Syracuse Cablesystems v Niagara Mohawk Power Corp.*, 173 AD2d 138, 143; *see, LaBarre v Mitchell*, 256 AD2d 850, 852-853; *cf., Bocre Leasing Corp. v General Motors Corp. [Allison Gas Turbine Div.]*, supra at 693; *Carcone v Gordon Heating & Air Conditioning Co.*, 212 AD2d 1017).

None of the remaining moving defendants submitted evidence in admissible form sufficient to establish their entitlement to summary judgment with respect to the merits of the causes of action for negligence and strict products liability (*see generally, Alvarez v Prospect Hosp.*, 68 NY2d 320, 324), and thus the court erred in granting the motions of Racine and Av-

net and that part of the cross motion of Louvers based on the merits of those causes of action. In particular, Avnet failed to meet its initial burden of establishing that it was under no duty to provide a failsafe device for the die cast machine or to warn of the need for such a device. In addition, Racine and Louvers sought summary judgment on the ground that they are not subject to successor liability, and Avnet sought summary judgment based on plaintiff's alleged spoliation of material evidence. Because those additional issues concerning successor liability and spoliation were not addressed by the motion court, we do not reach them, but instead remit the matter to Supreme Court to determine the motions of Racine and Avnet and the cross motion of Louvers with respect to those issues (*see, International Sys. v Delcrete Corp.*, 134 AD2d 947; *cf., Fleiss v South Buffalo Ry. Co.*, 291 AD2d 848).

Finally, plaintiff has not addressed in its brief on appeal those parts of the order and judgment in appeal No. 2 dismissing the cause of action for breach of warranty against Louvers and denying plaintiff's cross motion to compel further disclosure from Racine, and thus we deem those issues abandoned (*see, Ciesinski v Town of Aurora*, 202 AD2d 984). We therefore reverse the order and judgment in appeal No. 1, deny Rodman's motion and reinstate the fourth amended complaint and cross claims against Rodman. We modify the order and judgment in appeal No. 2 by denying the motion of Niagara Mohawk in part and reinstating the fourth amended complaint insofar as it asserts a cause of action for ordinary negligence against Niagara Mohawk, and reinstating the cross claims against it, and by denying the cross motion of Hamburg and reinstating the third-party complaint. We further modify the order by denying the motions of Avnet and Racine and denying in part the cross motion of Louvers with respect to the merits of the causes of action for negligence and strict products liability, and reinstating the fourth amended complaint against them with the exception of the breach of warranty cause of action against Louvers, and we remit the matter to Supreme Court to determine the motions of Avnet and Racine and the cross motion of Louvers with respect to the issues of successor liability and spoliation. Present—Wisner, J.P., Hurlbutt, Kehoe and Lawton, JJ.